IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KYLE BRISBIN, Individually, and as
Personal Representative of the Estate of
ROBERT F. BRISBIN, Deceased,

      Plaintiff,

    v.                                      Civ. No. 18-128 SCY/LF

UNITED STATES OF AMERICA,

      Defendant.

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Kyle Brisbin brings this medical malpractice action in connection with the death of her late husband, Robert Brisbin. Mr. Brisbin presented to the VA Medical Center in Albuquerque reporting stroke signs and symptoms. Mr. Brisbin was transferred to UNM Hospital a few hours later, unconscious and on ventilation. Approximately 18 days after this, he was transferred to hospice, where he passed away. Plaintiff brings this suit against the United States of America, arguing that the VA nurses and staff should have ensured a timelier transfer of Mr. Brisbin to UNM Hospital.

After Plaintiff disclosed an expert witness who opined only on the negligence of contract doctors rather than on the negligence of any United States employee, the United States filed the present motion for summary judgment (Doc. 58), arguing that Plaintiff must have expert testimony to support her claims, and that summary judgment is appropriate where her expert did not offer any opinions that the VA nurses and staff were negligent. In response to the motion—

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct all proceedings and to enter an order of judgment. Docs. 8, 14 & 15.

1

well after the deadline to produce expert reports and after the close of discovery—Plaintiff disclosed a "supplemental" affidavit from her expert, this time opining that the VA nurses and staff were partially responsible for the delay in transfer and their conduct fell below the standard of care. In reply, the United States moved to strike the untimely supplemental affidavit and argued that the opinions therein are so conclusory that the supplemental affidavit is not competent evidence to defeat summary judgment. On surreply, Plaintiff did not contest the untimeliness of his supplemental affidavit but proposed a sanction less severe than striking the affidavit. For the reasons explained below, the Court will defer ruling on this motion until after a hearing.

## BACKGROUND

A.  Procedural History

Plaintiff filed her Complaint for Medical Negligence and Wrongful Death on February 7, 2018. Doc. 1. It contained five counts: (1) Medical Negligence of Defendant New Mexico VA Health Care System; (2) Professional Negligence of Defendant New Mexico VA Health Care System; (3) Wrongful Death; (4) Loss of Consortium; and (5) Negligent Hiring, Supervising And/Or Retention of Defendant New Mexico VA Health Care System. *Id.* Defendant United States filed its Answer on April 16, 2019. Doc. 12. On May 23, 2018, I entered an Order regarding a related case Plaintiff also filed in federal court, captioned *Brisbin v. AB Staffing Solutions, LLC*, Civ. No. 17-1183 WJ/SCY. *See* Doc. 18. I noted that, "[g]enerally speaking, both the present case and the companion case arise from allegations of negligent medical treatment received by Robert Brisbin at the Raymond G. Murphy VA Medical Center on the night of December 28, 2014." *Id.* at 1. The defendants in No. 17-1183 WJ/SCY are Dr. Parmjit M. Singh and his employer, AB Staffing Solutions, whereas the defendant in the instant case is

the United States, who runs the VA Medical Center and contracted with Dr. Singh to provide medical care at that facility.

The defendants in No. 17-1183 WJ/SCY filed a motion to consolidate discovery, noting that Plaintiff did not oppose consolidation but that the United States, a party in No. 18-128 SCY/LF, did oppose consolidation. No. 17-1183 WJ/SCY, at doc. 28 (filed Apr. 18, 2018). The United States, however, later withdrew its opposition. Doc. 22.[2] I entered an order consolidating the cases for discovery purposes. Docs. 25 & 26. I then entered an Amended Scheduling Order applicable to both cases, setting Plaintiff's expert disclosure deadline for September 3, 2018; a discovery termination date of November 15, 2018; and a pretrial motions deadline of December 5, 2018. Doc. 27. On September 6, pursuant to a request by all parties in both cases, I entered an Order Granting Joint Motion To Extend Pretrial Deadlines. Doc. 34. I set the new deadline for Plaintiff's expert disclosure for October 3, 2018; the new discovery termination date for December 15, 2018; and the new pretrial motions deadline for January 17, 2018. *Id.* On October 3, 2018, I granted another joint motion to extend deadlines, setting Plaintiff's expert disclosure deadline for December 3, 2018; the discovery deadline for February 15, 2019; and the pretrial motions deadline for March 18, 2019. Doc. 38. Plaintiff filed a Certificate of Service of his Expert Witness Disclosure on December 3, 2018, disclosing Robert W. Derlet, MD and Kevin Yoo, MD, F.A.N.S., F.A.C.S. as expert witnesses. Doc. 43. Plaintiff filed an identical disclosure in No. 17-1183 WJ/SCY on the same date. *See* No. 17-1183 WJ/SCY, at doc. 52 (filed Dec. 3, 2018).

---

[2] Unless otherwise specified with a different case number, docket citations are to ECF documents filed in No. 18-128 SCY/LF.

After the cases were briefly stayed during the federal government shutdown in January 2019, Judge Fashing conducted a status conference on February 13, 2019. The parties in No. 17-1183 WJ/SCY informed her that they reached a negotiated settlement. Doc. 57. The parties in that case submitted closing documents and Judge Johnson granted the stipulated motion to dismiss. No. 17-1183 WJ/SCY, at doc. 61 (filed Mar. 7, 2019).

Meanwhile, in the present case, Judge Fashing extended the discovery termination date to April 22 and the pretrial motions deadline to May 23. Doc. 51. The parties also jointly moved to vacate a settlement conference before Judge Fashing, preferring to instead obtain a decision on dispositive motions the United States planned to file. Docs. 53 & 55. On July 3, 2018, Plaintiff filed a notice of withdrawal of Counts II and IV of her Complaint, Doc. 29, and on May 15, 2019, filed another notice withdrawing Count V of her Complaint, Doc. 57.

On May 22, the United States filed the instant Motion for Summary Judgment And/Or To Dismiss. Doc. 58. In its motion, the United States argues that it is entitled to summary judgment in this medical malpractice case because Plaintiff's claims require expert testimony, and Plaintiff did not disclose any expert opinions on the subject of the United States' negligence. Plaintiff did disclose expert witnesses under Fed. R. Civ. P. 26(a)(2) in accordance with the Court's Scheduling Order. Doc. 43. But, according to the United States, the expert reports only disclosed opinions regarding the negligence of a contract doctor, Dr. Singh, for whom the United States is not liable. Doc. 58 at 9. Therefore, the United States argues, Plaintiff has no expert testimony to establish any negligence by the United States. *Id.*

In her response in opposition to the Motion, filed June 12, 2019, Plaintiff attaches an affidavit from Dr. Derlet offering opinions regarding the United States' alleged negligence and argues that these opinions meet her burden to provide expert testimony in support of her claims.

Docs. 63 & 63-1. The United States filed its reply on June 26, 2019. Doc. 64. In reply, the United States observes that these opinions were not contained in the original disclosure, and argues the affidavit attached to Plaintiff's response is therefore an untimely expert disclosure under this Court's Scheduling Order, Doc. 38, and Federal Rule of Civil Procedure 26(a)(2)(D). Doc. 64 at 4-7. The United States moves to strike the supplemental affidavit of Plaintiff's expert. *Id.* The United States also argues that Dr. Derlet's supplemental affidavit does not meet Plaintiff's burden to establish medical malpractice because it offers conclusions with no explanations. Doc. 64 at 7-10.

Because Plaintiff attached Dr. Derlet's supplemental affidavit to her response brief, the arguments the United States raised in reply concerning that affidavit were new (not presented in the United States' original motion). On that basis, the Court invited Plaintiff to file a surreply to address the new arguments raised in the United States' reply brief. Doc. 68. Plaintiff filed her surreply on July 17, 2019. Doc. 69. In her surreply, Plaintiff argues that the United States should have been on notice of Dr. Derlet's opinion that the United States was negligent because Dr. Derlet's original affidavit "made it clear that the delay in transport was negligent" and "did not say that all the fault lay with Dr. Singh." Doc. 69 at 2. Plaintiff also argues that there is no prejudice to the United States from the supplemental affidavit, because there is no trial setting. *Id.* at 3. Plaintiff offers to have Dr. Derlet deposed at Plaintiff's expense. *Id.* Plaintiff does not respond to the United States' argument that Dr. Derlet's supplemental affidavit does not meet Plaintiff's burden to show medical malpractice because it offers conclusions with no explanations.

    B.    <u>Defendant's Statement of Material Facts</u>

Robert Brisbin presented to the Veterans Administration ("VA") Hospital's Emergency Department on December 28, 2014 after a reported fall and reported stroke signs and symptoms.

Doc. 58 ¶ 1; Doc. 63 at 2. Dr. Parmjit M. Singh was an emergency medical physician employed by AB Staffing Solutions, LLC, working as an independent contractor at the VA on December 28, 2014. Doc. 58 ¶ 2; Doc. 63 at 2. Mr. Brisbin was evaluated by Dr. Singh and sent for a CT scan without intravenous contrast. Doc. 58 ¶ 3; Doc. 63 at 2. The CT scan revealed Mr. Brisbin was suffering a left thalamic hemorrhage approximately 3 x 3.6 cm in size, with associated intraventricular hemorrhage predominantly on left side; 2.3mm left to right midline shift. Doc. 58 ¶ 4; Doc. 63 at 2. Dr. Singh consulted with the VA's attending neurosurgeon, Dr. Suguna Pappu. Dr. Pappu recommended Mr. Brisbin be transferred to UNM Hospital ("UNMH") for higher level care. Doc. 58 ¶ 5; Doc. 63 at 2. Before Mr. Brisbin was transported to UNMH, he became unstable, unresponsive to verbal cues and lost consciousness, requiring he be intubated. Doc. 58 ¶ 6; Doc. 63 at 2. Mr. Brisbin was transported to UNM Hospital unconscious and on ventilation, where he stayed for approximately 18 days, before being transferred to hospice, where Mr. Brisbin died on January 25, 2015. Doc. 58 ¶ 7; Doc. 63 at 2.

In accordance with the Court's scheduling order, Plaintiff disclosed his expert witness under Rule 26(a) on December 3, 2018. *See* Doc. 43; *see also* Doc. 38 (order extending deadline for expert witness disclosure to December 3, 2018). Plaintiff disclosed an emergency medicine expert, Dr. Robert W. Derlet, who opined in his report that "Dr. Singh failed to take appropriate action to stabilize Mr. Brisbin prior to transfer." Doc. 58 ¶ 8; Doc. 63 at 2; Doc. 58-4 at 2. According to Dr. Derlet, in the absence of the immediate availability of prothrombin complex concentrate, known as the brand name Kcentra, "Dr. Singh should have administered Fresh Frozen Plasma." Doc. 58 ¶ 9; Doc. 63 at 2; Doc. 58-4 at 2. "Either agent would rapidly reverse the anticoagulation, and stop the bleeding into [Mr. Brisbin's] brain." Doc. 58-4 at 2. Dr. Derlet opines that Dr. Singh's failure to do so falls below the standard of care. *Id.* at 2-3.

"The delay in transfer is also below the standard of care." *Id.* at 3. "Dr. Singh had the primary responsibility to ensure timely transfer of Mr. Brisbin to UNMH. It is below the standard of care for an ED physician to hand off a patient to an administrative employee to ensure timely transfer." Doc. 58 ¶ 10; Doc. 58-4 at 3. Dr. Derlet concludes that "Dr. Singh had full responsibility for care of the patient until he departed from the ED." Doc. 58 ¶ 11; Doc. 58-4 at 3. Plaintiff concedes that this is an accurate description of Dr. Derlet's report but states it does not constitute the entire opinion of Dr. Derlet on the issue of timely transfer. Doc. 63 at 2.

Plaintiff's neurosurgery medicine expert Dr. Kevin Yoo offers that "Dr. Singh should have given Brisbin fresh frozen plasma (FFP) or plasma complex concentrate (PCC or Kcentra) to rapidly reverse the effects of Coumadin in Brisbin." Doc. 58 ¶ 12; Doc. 63 at 2. Dr. Kevin Yoo also opines that "[m]edicolegally, Dr. Singh was responsible for and was the decision-maker of Mr. Brisbin while [Mr.] Brisbin was in the VA Emergency Room." Doc. 58 ¶ 13; Doc. 63 at 2.

      C.      <u>Plaintiff's Statement of Additional Material Facts</u>

Mr. Brisbin arrived at the VA Emergency Department on the night in question at 20:41. Doc. 63 ¶ 1; Doc. 64 at 2. Dr. Singh contacted the neurosurgeon attending, Dr. Pappu, at 21:40 and decided Mr. Brisbin would be transferred to UNMH. Doc. 63 ¶ 2; Doc. 64 at 2. Mrs. Brisbin signed a Patient Consent to Transfer at 21:48. Doc. 63 ¶ 3; Doc. 64 at 2. At 21:50 a Consent to Transfer was signed by Dr. Singh. Doc. 63 ¶ 4; Doc. 64 at 2. A Request for Transfer/Travel was also executed by Dr. Singh at 21:50, which indicated an intracranial bleed and an ETA of the ambulance of 23:10-23:20. Doc. 63 ¶ 5; Doc. 64 at 2. The ambulance company received the call for service at 22:45. Doc. 63 ¶ 6; Doc. 64 at 3.

Plaintiff asserts that transfer by ambulance occurred at 00:30 on December 29, over 2 hours and 30 minutes after consent was obtained. Doc. 63 ¶ 7. In support, Plaintiff cites her

Exhibit A, an affidavit from Dr. Derlet. *Id.* Dr. Derlet states that his knowledge comes from reviewing the Medical Records of Robert Brisbin regarding his visit to the Emergency Department at the VA Hospital on December 28, 2014. Doc. 63-1 ¶ 1. The United States disputes this fact, pointing to the medical records attached to Plaintiff's motion which record that the ambulance was dispatched at 22:45, arrived at the scene at 23:58, and was with the patient at 00:02. Doc. 64 at 3; Doc. 63-5 at 1. As set forth below, the Court intends to set a hearing in this matter. At this hearing, Plaintiff should provide the Court with the medical records on which Dr. Derlet relies to support this factual assertion.

By the time of Mr. Brisbin's transfer, his condition had deteriorated such that he required intubation because of unresponsiveness.[3] Doc. 63 ¶ 8. Again, Plaintiff cites Dr. Derlet's affidavit, even though Dr. Derlet does not have personal knowledge of Mr. Brisbin's conditions and merely reviewed medical records. The United States does not dispute that Mr. Brisbin required intubation, Doc. 64 at 3, but indicates that the medical record attached to Plaintiff's motion shows that when the ambulance arrived at the VA, he was found "lying in bed @ ER in no apparent pain/distress." Doc. 63-5. Other initial assessments indicated his vitals were unchanged up until the transfer. *Id.* Again, Plaintiff should provide the Court at the upcoming hearing with the medical records on which Dr. Derlet relies to support this factual allegation.

The rest of Plaintiff's facts are drawn from the Supplemental Affidavit of Dr. Derlet, which the United States contends Plaintiff first disclosed as an attachment to the response Plaintiff filed on June 12, 2019. The United States argues that this supplement is an untimely

---

[3] Plaintiff's Statement of Undisputed Facts states that Mr. Brisbin "required intubation because of responsiveness." Doc. 63 ¶ 8. This appears to be a typographical error, as Dr. Derlet opines that Mr. Brisbin's "condition had deteriorated such that he required intubation because of *un*responsiveness." Doc. 63-1 ¶ 13 (emphasis added).

8

expert report under the Court's Scheduling order and should be stricken. Doc. 64 at 3. This objection constitutes a dispute, by means of legal argument, to the facts contained in Plaintiff's supplemental expert report. The Court will address this legal argument later in this Order.

Dr. Derlet's Supplemental Affidavit sets forth his opinion that the treatment of Mr. Brisbin fell below the standard of care, both in the medical management and the delay in transfer from the VA Hospital. Doc. 63 ¶ 9. Mr. Brisbin should have been promptly transferred to UNMH for neurosurgical intervention. The delay in transfer is below the standard of care. *Id.* ¶ 10. Dr. Singh had primary responsibility to ensure timely transfer of Mr. Brisbin, but it was also the responsibility of the VA, its nurses and staff to ensure the timely transfer of Mr. Brisbin, which did not occur in this case. *Id.* ¶ 11. The internal documents from the VA demonstrate the ambulance service indicated the transfer would be at least one hour or more—this should have been told to Dr. Singh immediately and alternative transportation arranged. *Id.* ¶ 12. The VA's conduct, through its nurses and staff, fell below the standard of care for a hospital and was negligent. *Id.* ¶ 13. The failure to stabilize the patient and the delay in transport constituted significant factors in the progression of Mr. Brisbin's intracranial hemorrhage. *Id.* ¶ 14.

## **STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute as to any material fact unless the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim."

*Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (internal quotation marks omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

## DISCUSSION

**I.     Plaintiff Violated Rule 26(a).**

    A.    <u>Plaintiff's December 2018 Expert Disclosure Was Insufficient.</u>

"Rule 26(a)(2) requires expert reports 'contain a complete statement of all opinions to be expressed.'" *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 951-52 (10th Cir. 2002) (quoting Fed. R. Civ. P. 26(a)(2)(B)). If a party fails to disclose information required by Rule 26(a), it may not use any undisclosed information at trial, unless the failure is substantially justified or harmless. *Id.* (quoting Fed. R. Civ. P. 37(c)(1)). "Paragraph (2)(B) requires that persons retained or specially employed to provide expert testimony . . . must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." Fed. R. Civ. P. 26, Advisory Committee Notes, 1993 Amendment, Subdivision (a).[4] In other words, opinions that an expert will express at trial in the course of a direct examination must be included in his or her expert report.

---

[4] "Courts give weight to the advisory committee notes unless they contradict the plain language of the rule." *United States v. Jones*, 818 F.3d 1091, 1100 n.6 (10th Cir. 2016).

Dr. Derlet's original report did not disclose a single opinion about the United States' negligence. Nonetheless, Plaintiff argues that the United States should have been on notice of Dr. Derlet's opinion that the United States was negligent because Dr. Derlet's original affidavit "made it clear that the delay in transport was negligent" and "did not say that all the fault lay with Dr. Singh." Doc. 69 at 2. Granted, Dr. Derlet opined that the "primary" responsibility to ensure a timely transfer lay with Dr. Singh and so the United States could infer Plaintiff's position that some residual responsibility belonged to others, most likely the nurses and administrative staff at the hospital. But the standard is not whether the United States could have guessed what Dr. Derlet might opine. The standard is whether Dr. Derlet's December 2018 expert report "contain[ed] a complete statement of all opinions to be expressed." Fed. R. Civ. P. 26(a)(2)(B)(i).

Dr. Derlet's original affidavit failed to meet this standard because it did not disclose his opinion that "it was also the responsibility of the VA, its nurses and staff to ensure the timely transfer of Mr. Brisbin which did not occur in this case." Doc. 63-1 ¶ 17. Nor did it disclose his opinion that the VA knew the transfer would take an hour or more and that "this should have been told to Dr. Singh immediately and alternative transportation arranged." *Id.* ¶ 18. Finally, both Dr. Derlet's original affidavit and supplemental affidavit contain a sentence opining that the "failure to stabilize the patient and the delay in transport constituted significant factors in the progression of Mr. Brisbin's intracranial hemorrhage." Doc. 58-4 at 3; Doc. 63-1 ¶ 20. But in the original affidavit this sentence concludes a paragraph discussing *Dr. Singh's* negligence (Doc. 58-4 at 3) whereas the supplemental affidavit places this same sentence directly after a paragraph discussing *the VA's* negligence. Doc. 63-1 ¶¶ 19-20.

Plaintiff's supplemental report thus clearly contains material information not included in Plaintiff's original expert report. This originally omitted information is based on facts Plaintiff knew at the time he submitted his original expert report. Therefore, Plaintiff's disclosure of this material information is untimely and in violation of Rule 26(a) and the Court's scheduling order.

B.  The Violation Is Not Harmless Or Substantially Justified.

Plaintiff's violation of Rule 26(a) does not end the analysis. A Rule 26(a) violation may be excused if it is justified or harmless. Fed. R. Civ. P. 37(c)(1); *see Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) ("A trial court has broad discretion to decide if a Rule 26(a) violation is justified or is harmless."). In making this determination, the Court should consider: (1) whether the other party will be prejudiced, (2) the ability to cure any prejudice, (3) whether allowing the evidence would disrupt the trial, and (4) the violator's bad faith or willfulness. *Jacobsen*, 287 F.3d at 952-53; *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999).

"The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Id.* Nonetheless, the Tenth Circuit has issued some guidance concerning the application of the relevant factors. In *Neiberger v. Fed Ex Ground Package System, Inc.*, the Tenth Circuit found no abuse of discretion where the district court refused to award sanctions for a Rule 26(a) violation. 566 F.3d 1184, 1191-92 (10th Cir. 2009). This was partly because the opposing party in that case was not surprised by the new opinions offered by the expert. *Id.* at 1192. Instead of asserting that the expert offered an untimely opinion, the "complaint [was] that the report did not disclose the bases and data for [the expert's] conclusions." *Id.* The Tenth Circuit held that the failure to provide the peer-reviewed literature in support of the expert's opinion did not cause prejudice because the expert's opinion was "noncontroversial." *Id.*

In contrast, the Tenth Circuit in *Jacobsen v. Deseret Book Co.*, concluded that the district court abused its discretion in refusing to strike expert reports or allowing the opposing party more time to produce rebuttal expert reports. 287 F.3d 936, 952-54 (10th Cir. 2002). There, the district court had found that, although the original expert reports were incomplete, the opposing party should have known the contents of the undisclosed expert opinions and should not have been surprised by the disclosure. *Id.* at 952. The Tenth Circuit disagreed, pointing out that the expert's expected trial testimony contains "substantially more information than was presented in the expert reports" and concluding that prejudice occurred because the plaintiff had not been provided the "substance of the experts' testimony." *Id.* at 953. The Tenth Circuit then found that no cure for the prejudice existed under the district court's order because "nothing [plaintiff] could have done prior to filing of the expert reports would have cured the prejudice." *Id.* at 954. While the Tenth Circuit determined that the district court had failed to engage in a proper *Woodworker's Supply* analysis and reversed the district court's refusal to strike the four incomplete expert reports, it noted that the case was no longer on the eve of trial and so the district court "could allow [the experts] time to file complete expert reports without jeopardizing the trial schedule" and the plaintiff could then file rebuttal reports. *Id*. Thus, it appears that the Tenth Circuit left open the possibility that the district court could, on remand, choose to allow full development of the expert testimony at issue.

In the unpublished case of *Henderson v. National Railroad Passenger Corp.*, the Tenth Circuit upheld the district court's decision to strike a supplemental expert affidavit. 412 F. App'x 74, 82-83 (10th Cir. 2011). The court succinctly summed up its decision: "the district court rationally concluded that a 'supplemental' report that adds approximately 180 pages of additional information to a sixteen page report eight days before the discovery deadline, six months after

the Rule 26 deadline, and on the same date that [the defendant] moved for summary judgment and just more than one month before all dispositive motions were due would prejudice [the defendant] and disrupt the litigation." *Id.* at 83 (some internal quotation marks omitted). "[A]s the district court noted, if Plaintiffs needed additional time, they should have requested an extension from the court." *Id.*

Consistent with these cases, the Court's analysis starts with the four *Woodworker's Supply* factors. First among these factors is whether the violation caused prejudice or surprise to the party against whom the testimony is offered. Here, any surprise and prejudice is moderate. Dr. Derlet opined that Dr. Singh had the "primary" responsibility—not "sole" responsibility—to ensure Plaintiff's transfer. In addition, it was clear from the beginning of this lawsuit that Plaintiff understood that Dr. Singh was an independent contractor rather than an employee of the United States; after all, by the time Plaintiff sued the United States he had already sued Dr. Singh and his employer, AB Staffing Solutions, in a separate lawsuit. Given that separate lawsuit, the United States could not be surprised that Plaintiff was proceeding under the theory that the United States' employees—nurses and administrative staff—bore at least some of the residual responsibility Dr. Singh did not carry. Regarding prejudice, Dr. Derlet's initial failure to explicitly assign any responsibility to nurses or administrative staff would reasonably affect the United States' decision about whether to retain a rebuttal expert and whether to depose Dr. Derlet.

Moreover, Plaintiff's delay in providing Dr. Derlet's supplemental report until after Plaintiff settled its separate lawsuit against Dr. Singh has likely disadvantaged the United States. The dynamics of the two lawsuits Plaintiff filed are such that the more responsibility Dr. Derlet placed on Dr. Singh's shoulders, the less responsibility remained available for the VA employees

14

to bear. Once Plaintiff settled with Dr. Singh, Plaintiff gained an incentive to transfer as much blame as possible from the shoulders of Dr. Singh to the shoulders of the VA employees. By waiting to provide the supplement to Dr. Derlet's report until after settling with Dr. Singh, Plaintiff deprived the United States of the opportunity to depose Dr. Derlet at a time when Plaintiff had an incentive to place blame on the shoulders of Dr. Singh rather than on the VA employees.

Now that Plaintiff has settled with Dr. Singh, the hands of time cannot be turned back to cure this potential prejudice. Any deposition the United States might take of Dr. Derlet in the future will necessarily occur after Plaintiff's incentive has shifted. Nonetheless, this prejudice is less than it would be in an alternative situation, such as disclosure on the eve of trial where the United States could not depose Dr. Derlet at all. Further, if the Court ultimately chooses not to strike Dr. Derlet's supplemental report, it will provide the United States time to obtain a rebuttal expert. Thus, the prejudice the United States will experience can be partially cured.

Moving to the third factor, no trial has been set and so providing the United States time to depose Dr. Derlet and to obtain its own rebuttal expert would not disrupt trial. Also weighing in favor of Plaintiff is the fourth factor: the United States has not alleged, and the Court does not possess evidence, that Plaintiff acted willfully or in bad faith.

Considering these factors in the aggregate, the Court concludes that Plaintiff's violation of Rule 26(a) was neither substantially justified nor harmless. Despite the opportunity to file a surreply, Plaintiff offers no excuse for not timely providing the supplemental information and thus provides the Court with no basis to conclude that Plaintiff's violation was substantially justified. Further, because the prejudice this delay caused to the United States cannot be completely cured, the Court also cannot conclude that the violation was harmless.

C. Sanctions Less Severe Than Precluding Dr. Derlet From Presenting His Supplemental Information May Be Appropriate.

This conclusion leads to the next question: what is the appropriate remedy for Plaintiff's belated disclosure of supplemental expert information? The presumptive remedy under Rule 37(c)(1) is that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial . . . ." The rule also provides for less draconian sanctions, however. It continues, "[i]n addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard" may impose a variety of other sanctions. *Id.* R. 37(c)(1)(A)-(C).

Plaintiff proposes in his surreply that, rather than striking Dr. Derlet's supplemental expert report, the Court impose one of those lesser sanctions listed. She succinctly states, "Plaintiff has no problem having Dr. Derlet deposed at the expense of Plaintiff." Doc. 69 at 3. The Court will construe Plaintiff's proposal to be a motion for an alternative sanction under Rule 37(c)(1).

Rather than striking Dr. Derlet's supplement for untimeliness,[5] the Court is inclined to grant Plaintiff's motion and impose one or more of the alternative, less severe, sanctions at its disposal. A number of considerations support this inclination. First, the Court prefers to resolve cases on their merits and striking Dr. Derlet's supplemental report for Plaintiff's procedural violation could be outcome determinative. As a fellow judge in this district has recognized, "Without a finding of bad faith or gamesmanship . . . courts are loathe to invoke the strong medicine of precluding expert testimony." *Harvey v. THI of N.M. at Albuquerque Care Ctr., LLC*, No. 12cv727, 2015 WL 13667111, at *6 (D.N.M. Mar. 31, 2015) (Armijo, C.J.)

---

[5] The United States has also sought to exclude Dr. Derlet's testimony under *Daubert*. Doc. 54 at 7-10. The Court does not address the merits of that motion in this Order.

(unpublished) (internal quotation marks omitted; alteration in original). Second, trial has not yet been scheduled and so the disruption of a lesser sanction is minimal. Third, the United States has not yet deposed Dr. Derlet and so retains whatever advantage might come with deposing a witness in the first, rather than second, instance. Fourth, unlike the situation in *Henderson v. National Railroad Passenger Corp.* where the 180 pages of additional information dwarfed the 16 pages of original information, the supplemental information Dr. Derlet provides was predictable and fits on one page. Fifth, part of the second, and all of the third and fourth, *Woodworker's Supply* factors weigh in favor of Plaintiff.

Although the Court now provides its inclination and reasons for its inclination to the parties, the Court stops short of making a final decision at this time. Rule 37(c)(1) states that, before issuing alternative sanctions, a Court must provide an opportunity to be heard. Because Plaintiff's motion is contained in his surreply, the United States has not yet had that opportunity to be heard. As a result, the Court will schedule a hearing on whether lesser sanctions are appropriate and, if so, what those lesser sanctions should be. In addition to shifting the costs to Plaintiff of any deposition the United States might wish to take of Dr. Derlet, the Court is also inclined to allow the United States to cross-examine Dr. Derlet at trial regarding the timing of his supplemental disclosure and to order Plaintiff to pay the United States' reasonable expenses, including attorney's fees, in connection with the hearing on this matter. This is because the need for the hearing was caused by Plaintiff's failure to timely disclose Dr. Derlet's supplemental report. *See* Fed. R. Civ. P. 37(c)(1)(A) (providing for such cost shifting).

**II.   At The Hearing, The Court Will Address The Timing Of A Possible *Daubert* Hearing, But Not The Merits Of The United States' *Daubert* Motion.**

In addition to arguing that the Court should strike Dr. Derlet's supplemental report as untimely, the United States argues that, even if the Court does not strike the supplemental report,

17

the report fails to pass muster under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993). Because the Court has not yet decided whether to strike Dr. Derlet's supplemental report and, if it does, whether doing so will result in summary judgment for the United States, the time is not ripe to address this argument or to have a *Daubert* hearing. During the upcoming hearing, however, the parties should be prepared to address whether, if the Court does not strike Dr. Derlet's supplemental report, the Court should deny the United States' *Daubert* motion as moot with leave to refile and, if not, whether a *Daubert* hearing is necessary and, if so, when the Court should schedule such a hearing.

## **CONCLUSION**

The Court takes under advisement the United States' Motion for Summary Judgment And/Or To Dismiss, Doc. 58, and will hear this matter Friday, September 6, 2019, at 9:30 am in 480 Chama Courtroom, 333 Lomas Blvd NW Albuquerque, NM 87102.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent